## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Anand Chavakula,

          Plaintiff,

     v.

Christian Heritage Broadcasting, Inc.,

          Defendant.

Civil Action No. 8:21-cv-03295

## DEFENDANT CHRISTIAN HERITAGE BROADCASTING, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, OR ALTERNATIVELY TO TRANSFER TO THE DISTRICT OF MINNESOTA

Defendant Christian Heritage Broadcasting, Inc. ("Christian Heritage Broadcasting"), by and through its undersigned counsel, submits this Memorandum in Support of its Motion to Dismiss Plaintiff Anand Chavakula's ("Plaintiff") First Amended Complaint ("FAC") (ECF No. 27).

## INTRODUCTION

Christian Heritage Broadcasting is not at home in Maryland, and has not purposely availed itself of the jurisdiction, and therefore jurisdiction and venue are improper. Christian Heritage Broadcasting is a Minnesota nonprofit corporation that directs its goods and services to a few states in the upper Midwest and internationally to certain countries in Africa. Christian Heritage Broadcasting has no ties with, never directed business to, and has less than one percent of its online listeners in Maryland. This case presents the precise scenario the United States Supreme Court has cautioned about for decades: a plaintiff hailing a defendant into a jurisdiction where it has no ties and in violation of its due process rights. Thus, Christian Heritage Broadcasting respectfully requests that the Court dismiss this case for lack of personal jurisdiction and improper venue.

Alternatively, if the Court denies the motion to dismiss, Christian Heritage Broadcasting respectfully requests that the Court transfer this case to this case to the District of Minnesota.

<strong>FACTS</strong>

## I.    Background

Founded in 1985, Christian Heritage Broadcasting is a Christian radio ministry that broadcasts Christian music programming on over-the-air radio stations, internet radio stations, and mobile applications. (McIver Decl. ¶¶ 4–5, 8–10). In early 2017, Christian Heritage Broadcasting rebranded and began offering its goods and services under the name PraiseLive. (*Id.*).

Christian Heritage Broadcasting is incorporated in Minnesota as a domestic nonprofit corporation. (*Id.* ¶ 6). Its principal place of business is also in Minnesota. (*Id.*). Christian Heritage Broadcasting's main studio in Osakis, Minnesota serves as its corporate headquarters. (*Id.*). Christian Heritage Broadcasting's employees reside in Minnesota as well. (*Id.* ¶ 7). It also works with independent contractors based out of Florida, Colorado, and Africa. (*Id.*). Christian Heritage Broadcasting does not have any employees or independent contractors located in Maryland. (*Id.*).

Domestically, Christian Heritage Broadcasting broadcasts on five United States FM Radio stations that reach listeners in Minnesota, South Dakota, and Montana. (*Id.* ¶ 8). Three of these radio stations broadcast out of cities in Minnesota; the others broadcast out of South Dakota and Montana. (*Id.*). Further, Christian Heritage Broadcasting is heard on FM translators[1] in Minnesota and South Dakota. (*Id.*). Christian Heritage Broadcasting does not currently have a signal on HD2 radio. (*Id.* ¶ 6) Christian Heritage Broadcasting does not direct its domestic FM radio stations to Maryland; in fact, these stations do not reach Maryland. (*Id.* ¶ 8).

---

[1] FM translators are low-powered signals that are not fully licensed radio stations with the Federal Communications Commission. (*Id.*).

Internationally, Christian Heritage Broadcasting broadcasts on nearly 100 FM radio stations in Africa, as well as satellite radio networks in Africa and the Middle East. (*Id.* ¶ 9). The international FM radio stations reach listeners in Ghana, Uganda, Guinea-Bissau, Sierra Leone, Malawi, Togo, Liberia, Namibia, Benin, and Mozambique. (*Id.* ¶ 14).

Christian Heritage Broadcasting also offers its content online through internet radio stations on its website (praiselive.org/listen) and mobile applications available on the Apple App Store and Google Play Store. (*Id.* ¶ 10). There are three different "channels": a "Local" channel tailored to listeners in Minnesota, North Dakota, and South Dakota; an "Africa" channel designed to serve listeners in Africa; and a "Global" channel directed to the world at large. (*Id.*). None of these channels are directed to or tailored for listeners in Maryland. (*Id.*). Christian Heritage Broadcasting's radio and internet radio programs operate like other types of radio programs, complete with hosts and guests. (*Id.* ¶ 11). Listeners cannot select a specific song to listen to and do not have control over the programming. (*Id.*).

Christian Heritage Broadcasting's strongest following is in its home region of Minnesota and the Dakotas. (*Id.* ¶ 13). Maryland is not a relevant market for Christian Heritage Broadcasting's services. Indeed, Christian Heritage Broadcasting's FM radio stations do not reach Maryland and a statistically insignificant portion—less than one percent—of its internet radio traffic came from Maryland. (*Id.* ¶ 15). This reality is reflected in Christian Heritage Broadcasting's donation statistics: more than 90% of Christian Heritage Broadcasting's donations come from Minnesota, the Dakotas, and Wisconsin, while just one donation came from a person in Maryland since Christian Heritage Broadcasting's founding. (*Id.* ¶ 16). That lone donation was made in 2015 in the amount of $25—before Christian Heritage Broadcasting rebranded to PraiseLive. (*Id.*).

## II.    Procedural Posture

On July 31, 2018, the United States Patent and Trademark Office issued federal registration



for the PRAISELIVE and Design trademark for use with "Broadcasting of radio programmes; Broadcasting programs via a global computer network; Audio Broadcasting" in International Class 38 ("Defendant's Mark"). (ECF No. 27-1 Ex. E). Christian Heritage Broadcasting offers its goods and services under this mark. (McIver Decl. ¶ 18).

Plaintiff is a Christian minister who creates and distributes Christian audio, video, and other resources online. (FAC ¶¶ 7, 13–17). Plaintiff does not offer radio or internet radio services like Christian Heritage Broadcasting does—he creates and collects resources related to Christian music and makes those resources available in a "Music Vault" on his website. *See Music Vault*, praiselive.com/musicvault.htm (last visited July 1, 2022). The Music Vault sorts music by name, identifies the musical key each song is written in, and has links to chords, lyrics, audio recordings, and video recordings for the song. *Id.* Users are free to select the song of their choice. *Id.* There are no features typical of a radio station on Plaintiff's website, such as hosts, guests, or a selectable "channel." *See id.*; *see also* FAC ¶ 8; ECF No. 27-1, Ex. C.

In May 2019, about a year after Defendant's Mark issued, Plaintiff applied for federal registration of the PRAISELIVE standard character mark ("Plaintiff's Application"). (ECF No. 27-1, Ex. B). Two weeks later, on June 4, 2019, Plaintiff filed a Petition for Cancellation in the Trademark Trial and Appeal Board ("TTAB") seeking cancellation of Defendant's Mark. (FAC ¶ 46).

During the TTAB proceedings, Plaintiff applied for federal trademark registration of

PRAISELIVE and Design *Praise Live* ("Plaintiff's Mark"). (ECF No. 27-1, Ex. A). The USPTO issued federal registration for Plaintiff's Mark on April 20, 2021. (*Id.*). Meanwhile, Plaintiff abandoned Plaintiff's Application in response to an office action initiated by the USPTO, but the application has since been revived and on hold pending the outcome of the TTAB proceeding. (ECF No. 27-1, Ex. B).

On April 12, 2022, the TTAB granted Plaintiff's motion to suspend the proceeding pending the disposition of this case. *See* TTAB Cancellation No. 92071482, D.I. 46.

## ARGUMENT

Christian Heritage Broadcasting is not at home in Maryland, has never directed business to Maryland, and has scant unrelated contacts in Maryland. Christian Heritage Broadcasting is therefore not subject to personal jurisdiction in Maryland, venue is improper in this District, and the Court should dismiss the FAC. Alternatively, if it declines to dismiss, this Court should transfer this action to the U.S. District Court for the District of Minnesota.

## I.     Christian Heritage Broadcasting is not subject to personal jurisdiction in Maryland.

A motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) "is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (quotation omitted). The Court may resolve the motion based on the motion papers, affidavits, and allegations in the complaint. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009). While the Court construes disputed facts and reasonable inferences in favor of the plaintiff, it is "not required to look solely to the plaintiff's proof in drawing those inferences." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993).

Personal jurisdiction is a due process requirement grounded in the Fourteenth Amendment.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–73 (1985). It ensures that the defendant has sufficient contacts with the federal forum, such that defending a lawsuit there "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945).

The Federal Rules of Civil Procedure authorize district courts to exercise personal jurisdiction over a defendant according to the law of the state where the court is located. Fed. R. Civ. P. 4(k)(1)(A). The plaintiff must meet two conditions to prove jurisdiction: (1) the exercise of jurisdiction is authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Maryland's long-arm statute is coextensive with the limits of personal jurisdiction set by the Fourteenth Amendment's due process clause, thus, "the two inquiries essentially become one." *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir. 1996).

Courts recognize two types of personal jurisdiction: general and specific. *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, --- U.S. ---, 137 S. Ct. 1773, 1780 (2017). General personal jurisdiction exists where the defendant's contacts with the forum are so "continuous and systematic" that the defendant is "essentially at home in the forum State." *Daimler AG v. Baumann*, 571 U.S. 117, 138–39 (2014). Specific personal jurisdiction exists when the defendant, through purposeful actions, availed itself to the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

The FAC asserts the following factual allegations related to jurisdiction, each of which are based upon Plaintiff's information and belief:

- Christian Heritage Broadcasting is a Minnesota corporation with a principal place of

business in Osakis, Minnesota. (FAC ¶ 6).

- Christian Heritage Broadcasting "ministers to people throughout the United States and around the world, including to residents of Maryland, on its FM and HD2 radio stations" and online. (*Id.* ¶ 21).

- Christian Heritage Broadcasting offers radio ministry "on five FM Radio stations in Minnesota, South Dakota, Montana, and Illinois, plus eleven FM stations in Africa and New Zealand as well as numerous radio stations on the internet that broadcast to the entire world, including to residents of Maryland." (*Id.* ¶ 22).

- Christian Heritage Broadcasting broadcasts, distributes, advertises, promotes, and offers its goods and services using Defendant's Mark "throughout the United States, including in Maryland." (*Id.* ¶¶ 30, 32–34).

In essence, Plaintiff asserts personal jurisdiction based on Christian Heritage Broadcasting's offering its goods and services bearing Defendant's Mark through radio stations in the upper Midwest, radio stations in other countries, and an internet website that is available to the entire world. None of these, individually or collectively, subject Christian Heritage Broadcasting to personal jurisdiction in Maryland. The FAC should be dismissed.

**A.    Christian Heritage Broadcasting is not "essentially at home" in Maryland for purposes of general personal jurisdiction.**

General personal jurisdiction requires the defendant to have had "continuous and systematic" contacts with the forum state "of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Daimler*, 571 U.S. at 127. "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 571 U.S. at 137. There are two "paradigm" forums of general personal jurisdiction for a corporation: its place of incorporation and its principal place of business.

*Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 924 (2011).

Cases since *International Shoe* have drawn the metes and bounds of general personal jurisdiction. For example, the plaintiff in *Perkins v. Benguet Consol. Mining Co.* sued a Philippine company in Ohio for a claim unrelated to the company's activities in the state. 342 U.S. 437, 448 (1952). The Supreme Court held that the company was essentially at home in Ohio because its president moved to Ohio and kept an office, maintained the company's files, and oversaw the company's activities there. *Id.* The Philippine company could therefore be sued in Ohio court. *Id.* *Perkins* is considered "the textbook case of general jurisdiction." *Daimler*, 571 U.S. at 129.

Another case from 30 years later came out the other way. *Helicopteros* arose out of a fatal helicopter crash in Peru. 466 U.S. at 409–10. The deceased persons' survivors and representatives sued the helicopter's owner and operator, a Colombian corporation, for wrongful death in Texas state court. *Id.* at 410. The defendant was not incorporated in Texas, did not have its principal place of business in Texas, and was never licensed to do business in Texas. *Id.* at 416. The defendant's only contacts with Texas consisted of sending its CEO to Houston to negotiate an unrelated contract; accepting checks drawn from a Houston bank; purchasing helicopters, equipment, and training services from a Texas company; and sending employees to Texas for training. *Id.* The Supreme Court held that the CEO's trip to Houston was a one-off occurrence, not a "continuous and systematic" contact. *Id.* at 416. The bank checks were "unilateral activity of another party or a third person" irrelevant to the jurisdiction analysis. *Id.* at 416–17. And the purchases and personnel training did not "enhanc[e]" the defendant's contacts. *Id.* at 418. Thus, Texas did not have personal jurisdiction over the defendant. *Id.* at 418–19.

Christian Heritage Broadcasting's contacts with Maryland are even more sparse than the *Helicopteros* defendant. As Plaintiff acknowledged in the FAC, Christian Heritage Broadcasting

is a Minnesota nonprofit with its principal place of business in Minnesota. (FAC ¶ 6). Plaintiff's sole basis for personal jurisdiction therefore rests on his allegations that Christian Heritage Broadcasting "ministers to people throughout the United States and around the world, including to residents of Maryland, on its FM and HD2 radio stations" and online. (FAC ¶¶ 21–22; *see also id.* ¶¶ 28, 30–32). But those radio stations are located in and broadcast to states in the upper Midwest and regions in other countries—they do not reach Maryland. (McIver Decl. ¶¶ 8–9, 14–15). Christian Heritage Broadcasting cannot possibly be "essentially at home" in Maryland based on over-the-air radio stations that are not accessible in Maryland.

The internet radio stations are also nonstarters. Any person in Maryland who accesses those stations does so on their own prerogative. That makes the internet radio stations akin to the cashed checks asserted in *Helicopteros*: they are "of negligible significance for purposes of determining whether [Christian Heritage Broadcasting] had sufficient contacts in [Maryland]" because "unilateral activity of another party or a third person is not an appropriate consideration." 466 U.S. at 416–17.

Moreover, Fourth Circuit precedent requires Plaintiff to "allege specific facts connecting [Christian Heritage Broadcasting] with the forum" to establish personal jurisdiction. *Lolavar v. de Santibanes*, 430 F.3d 221, 230 (4th Cir. 2005). Allegations based on information and belief are not enough. *See Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 543 (D. Md. 2011) ("An allegation made on information and belief does not serve as a reliable foundation upon which to predicate a final judgment." (quotation omitted)). Plaintiff bases every one of his allegations on his "information and belief" and without any supporting facts. (FAC ¶¶ 21–22, 27, 30–35, 37, 40–42). Such conclusory allegations are insufficient as a matter of law. *See Gilmore v. Jones*, 370 F. Supp. 3d 630, 660 (W.D. Va. 2019) (setting aside conclusory allegations while analyzing personal

jurisdiction).

The declaration of David McIver underscores the paucity of contacts with Maryland. Christian Heritage Broadcasting's internet radio stations are its only goods and services that could reach Maryland, but less than one percent of its internet traffic comes from Maryland. (McIver Decl. ¶ 15). Christian Heritage Broadcasting has not directed its advertisements to Marylanders. (*Id.* ¶ 17). Only one person from Maryland has donated to Christian Heritage Broadcasting, which was in 2015 and before the rebrand. (*Id.* ¶ 16). Christian Heritage Broadcasting's contacts with Maryland are virtually nonexistent.

This case is another textbook example of a defendant being hailed into a forum where it has no contacts. Christian Heritage Broadcasting simply does not have "continuous and systematic" contacts with Maryland such that it is "essentially at home" here. This Court does not have general personal jurisdiction over Christian Heritage Broadcasting.

**B.    Christian Heritage Broadcasting is not subject to specific personal jurisdiction because it has not purposefully directed its contacts to Maryland.**

Specific personal jurisdiction exists when "the suit arise[s] out of or relate[s] to the defendant's contacts with the forum." *Id.* at 127 (quotation omitted). "The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'" *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, --- U.S. ---, 141 S. Ct. 1017, 1024 (2021). The defendant's "contacts must be [its] own choice and not random, isolated, or fortuitous." *Id.* at 1025 (quotation omitted). That is, the defendant's contacts must "show that [it] deliberately reached out beyond its home— by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Id.* The Fourth Circuit applies a three-part test for analyzing specific personal jurisdiction over a defendant: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of

those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quotation omitted).

Each of these factors weigh against finding jurisdiction in this case. Again, Christian Heritage Broadcasting does not direct its advertisements to Maryland. (McIver Decl. ¶ 17). A small fraction of Christian Heritage Broadcasting's listeners—less than one percent of all its internet traffic—are from Maryland. (*Id.* ¶ 15). None of Christian Heritage Broadcasting's FM radio stations reach Maryland. (*Id.*). Only one donor was from Maryland. (*Id.* ¶ 16). Plaintiff has not asserted any way Christian Heritage Broadcasting directed its activities specifically to Maryland. Without any of this, Plaintiff cannot establish that Christian Heritage Broadcasting purposefully availed itself of doing business in Maryland.

Again, Plaintiff's sole argument for purposeful availment is his belief that Marylanders might have accessed Christian Heritage Broadcasting's services online. *Carefirst* makes clear that is not enough. In that case, the court considered "whether an Illinois organization subjected itself to [specific] personal jurisdiction by operating an Internet website that allegedly infringed the trademark rights of a Maryland insurance company." 334 F.3d at 393. The Illinois company, CPC, had "no physical presence in Maryland," did not directly solicit funds from persons in Maryland, and never provided its services to anyone in Maryland. *Id.* at 394. "CPC's sole contact with Maryland [arose] from its operation of an Internet website, accessible from anywhere in the world through any one of several web addresses." *Id.* Additionally, "a *de minimus* portion of [CPC's] charitable contributions [came] from Maryland residents." *Id.* at 395. The district court found no jurisdiction and dismissed the case. *Id.*

The Fourth Circuit focused much of its analysis on the "sliding scale" model for specific

personal jurisdiction first set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119

(W.D. Pa. 1997). *Zippo* "distinguished among interactive, semi-interactive, and passive websites":

> When a defendant runs an interactive site, through which he enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the internet, he can properly be haled into the courts of that foreign jurisdiction. If, by contrast, the defendant's site is passive, in that it merely makes information available, the site cannot render him subject to specific personal jurisdiction in a foreign court. Occupying a middle ground are semi-interactive websites, through which there have not occurred a high volume of transactions between the defendant and residents of the foreign jurisdiction, yet which do enable users to exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs.

*Carefirst*, 334 F.3d at 399 (quotations omitted). Applying this sliding scale, the court concluded

that CPC's websites were semi-interactive because they allowed users to exchange information

with the website host. *Id.* at 400. It then held that specific personal jurisdiction did not exist in

Maryland because the website had "a strongly local character" and "the only respect in which CPC

even arguably reache[d] out to Marylanders via its Internet website [was] in its generalized request

that anyone, anywhere make a donation to support CPC's Chicago-based mission. Such a

generalized request [was], under the circumstances, an insufficient Maryland contact to sustain

jurisdiction in that forum." *Id.* at 400–01.

   *Carefirst* squarely applies here and requires the same outcome. Christian Heritage

Broadcasting's website[2] is semi-interactive in that it allows users to listen to its programming. (*See*

McIver Decl. ¶ 10). But the programming is directed locally to the upper Midwest and regionally

to Africa and the Middle East—not Maryland. (*Id.*). And just like in *Carefirst*, the website's

donation page is generalized and not specific to anyone in any location. (*Id.* ¶ 16). Put simply,

Christian Heritage Broadcasting makes its website available to the world at large with an emphasis

---

[2] The mobile application mirrors the website, so the analysis for one applies to the other.

on listeners in the upper Midwest, Africa, and the Middle East—not Maryland. Even if Maryland residents have incidentally used Christian Heritage Broadcasting's website and listened to its content, as a matter of law specific jurisdiction does not exist under *Carefirst*.

Plaintiff's claim that he feels the effect of Christian Heritage Broadcasting's alleged infringement, if any, in Maryland is not a relevant factor. *Carefirst* is again instructive:

> In advocating in favor of Maryland jurisdiction, Carefirst emphasizes that Maryland is the focal point of the injuries that it has suffered by virtue of CPC's infringement of its trademark. . . . However, as we said in *Young*, "although the place that the plaintiff feels the alleged injury is plainly relevant to the jurisdictional inquiry, it must ultimately be accompanied by the defendant's own sufficient minimum contacts with the state if jurisdiction is to be upheld." And, for the reasons discussed above, those minimum contacts here are lacking.

*Carefirst*, 334 F.3d at 401 (quoting *Young v. New Haven Advocate*, 315 F.3d 256, 262 (4th Cir. 2002)). It is *Christian Heritage Broadcasting's* actions which matter to the jurisdiction analysis— not the effect those actions may have had on Plaintiff, if any.

Furthermore, subjecting Christian Heritage Broadcasting to personal jurisdiction in Maryland would not be constitutionally reasonable. This part of the analysis considers many factors, such as "[t]he burden on the defendant, interests of the forum state, and the plaintiff's interest in obtaining relief." *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 303 (4th Cir. 2012). Here, Maryland has little interest in hosting this litigation because Plaintiff's claimed trademark rights arise under federal law[3] and Christian Heritage Broadcasting's services are not often used by citizens of Maryland. The only connection this case has to Maryland is that Plaintiff lives there. That is not enough to make it "constitutionally reasonable" to require Christian Heritage Broadcasting to defend against this suit in a forum where

---

[3] To the extent Plaintiff alleges violations of his Maryland common law trademark rights, those rights are coextensive with his federal rights. *JFJ Toys, Inc. v. Sears Holdings Corp.*, 237 F. Supp. 3d 311, 327 n.6 (D. Md. 2017).

it is not incorporated, has no employees, directs no business, and would not have reasonably foreseen. *See Delta V Forensic Eng'g, Inc. v. Delta V Biomechanics, Inc.*, No. 3:17-cv-291-RJC-DCK, 2018 WL 1569867, at *5–*6 (W.D. N.C. Jan. 18, 2018) (finding exercise of jurisdiction was not constitutionally reasonable because the plaintiff's claims did not arise from defendant's activity in North Carolina and because defendant did not expressly aim its conduct at North Carolina).

Plaintiff's threadbare assertions of "widespread" consumer confusion should not affect the Court's analysis of personal jurisdiction. (FAC ¶ 41). If anything, these allegations go to the "effects test" articulated in *Calder v. Jones*, which states that a court may assert jurisdiction over a non-resident defendant who "expressly aimed" his tortious conduct at the forum state while knowing that the injury would be felt there. 465 U.S. 783, 789 (1984). The Fourth Circuit has narrowly interpreted the effects test, reaffirming the principle that personal jurisdiction turns on "the defendant's own contacts with the state." *ESAB Grp, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997). As applied and most relevant here, "a website that allegedly infringes on intellectual property does not automatically establish jurisdiction over the website's owner, particularly if there are only isolated or no sales to residents of the forum state." *Chattery Int'l, Inc. v. JoLida, Inc.*, No. CIV. WDQ-10-2236, 2011 WL 1230822, at *16 (D. Md. Mar. 27, 2011). As already explained, Christian Heritage Broadcasting did not expressly aim *any* of its activities at Maryland and received *one* donation from a person in Maryland. The fact that Plaintiff alleges—again on information and belief—that actual confusion occurred in Maryland cannot subject Christian Heritage Broadcasting to personal jurisdiction in Maryland. *See Music Makers Holdings, LLC v. Sarro*, No. RWT 09CV1836, 2010 WL 2807805, at *6, *9 (D. Md. July 15, 2010) (holding that, even assuming infringement and confusion occurred, personal jurisdiction was lacking

because the defendant had not "expressly aimed" her conduct at Maryland).

"In sum, when [Christian Heritage Broadcasting] set up its generally accessible, semi-interactive Internet website, it did not thereby direct electronic activity into Maryland with the manifest intent of engaging in business or other interactions within that state in particular." *Carefirst*, 334 F.3d at 401. Plaintiff failed to establish that Christian Heritage Broadcasting is subject to personal jurisdiction in Maryland. The Court should dismiss the FAC.

## II.     Venue in this District is improper.

Federal courts can also dismiss or transfer a case for improper venue. Fed. R. Civ. P. 12(b)(3). Statute provides for venue in three locations (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) if there is no district an action may be brought, any judicial district in which any defendant is subject to the court's personal jurisdiction. 28 U.S.C. § 1391(b). Plaintiff has the burden of establishing that venue is proper. *Jones v. Koons Automotive, Inc.*, 752 F. Supp. 2d 70, 679–80 (D. Md. 2010). The Court need not accept the pleadings as true and can consider evidence outside the FAC. *See Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006).

### A.     The Court should dismiss the FAC for improper venue.

#### 1.     Venue is not proper under section 1391(b)(1).

For venue purposes, a legal entity like Christian Heritage Broadcasting is deemed to reside in "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). For reasons already explained, Christian Heritage Broadcasting is not subject to personal jurisdiction in Maryland. Plaintiff therefore cannot  establish venue under section 1391(b)(1).

### 2.    Venue is not proper under section 1391(b)(2).

Under section 1391(b)(2), the determination of whether "a substantial part of the events or omissions giving rise to the claim" occurred in a particular judicial district considers "the entire sequence of events underlying the claim." *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) (quotation omitted). "Events that relate only tangentially to the claim cannot constitute a 'substantial part of the events or omissions giving rise to the claim'; indeed, strictly speaking, they do not 'give rise to' the claim at all." *MTGLQ Investors, L.P. v. Guire*, 286 F. Supp. 2d 561, 565 (D. Md. 2003). This District has previously noted that, in trademark infringement cases "where the allegedly infringing name is used on a nationwide basis, . . . the appropriate test is whether significant sales causing substantial injury were made in the district in which venue is asserted, or some other overt act constituting a significant and substantial element of the offense occurred there." *Finance Co. of Am. v. BankAmerica Corp.*, 493 F. Supp. 895, 910 (D. Md. 1980)). Other courts recognize that merely maintaining "a website that displays the allegedly infringing mark [and] can be accessed in the district is not sufficient for venue in the absence of sales in the district or other activities aimed at the district." *Kaia Foods, Inc. v. Bellafiore*, 70 F. Supp. 3d 1178, 1184–85 (N.D. Cal. 2014) (collecting cases). The plaintiff's activities are not relevant. *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (noting "Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff" for venue purposes).

None of the "events or omissions giving rise to the claim" in this case occurred in Maryland. Christian Heritage Broadcasting is a Minnesota nonprofit with its headquarters in Minnesota. (McIver Decl. ¶ 6). Any decision about which trademark to adopt and how that trademark is used was made in Minnesota. (*Id.* ¶¶ 7, 19–20). Christian Heritage Broadcasting does not have a radio station that broadcasts in Maryland. (*Id.* ¶¶ 8, 15). Less than one percent of

Christian Heritage Broadcasting's internet radio listeners are from Maryland. (*Id.* ¶ 15). And throughout its existence, Christian Heritage Broadcasting has received only one donation from Maryland. (*Id.* ¶ 16). Thus, because a "substantial part" of the events underlying Plaintiff's claims did not occur in Maryland, venue does not lie under section 1391(b)(2).

### 3.    Venue is not proper under section 1391(b)(3).

The third part of the venue statute is a "fallback option" if no venue is proper under subsections (b)(1) and (b)(2): any judicial district where the defendant is subject to personal jurisdiction. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 56–57 (2013). Venue under this subsection "only comes into play when there is no 'preferred judicial district for venue.'" *Laios v. MTM Builder/Developer, Inc.*, No. GJH-20-3337, 2021 WL 4478712, at *6 (D. Md. Sept. 31, 2021) (quoting *Atl. Marine Constr. Co.*, 571 U.S. at 56–57).

Fallback venue does not apply in this case, for two reasons. First, the proper venue for this case is the District of Minnesota because Christian Heritage Broadcasting is incorporated there and has its principal place of business there. *See* 28 U.S.C. § 1391(b)(1). The fact that venue is proper in Minnesota means that fallback venue is not an available option. *Laios*, 2021 WL 4478712, at *6 (finding venue was not proper under section 1391(b)(3) because "all three Defendants are residents of Florida," meaning "a federal judicial district in Florida in which one of the Defendants resides would be a proper venue"). And second, even if fallback venue was an option, Christian Heritage Broadcasting is not subject to personal jurisdiction in Maryland for the reasons already discussed. The fallback venue statute cannot salvage Plaintiff's suit in Maryland.

Accordingly, venue is not proper in Maryland under section 1391(b). The Court should dismiss on those grounds.

### B.    Alternatively, if the Court does not dismiss, this action should be transferred

to Minnesota.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). When deciding whether to transfer venue, "the Court first asks whether the action could have been brought in the transferee district." *Aphena Pharma Solution-Maryland LLC v. BioZone Labs., Inc.*, 912 F. Supp. 3d 309, 318 (D. Md. 2012). If so, the Court considers four factors: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).

Nothing stopped Plaintiff from filing this suit in the District of Minnesota—Christian Heritage Broadcasting is incorporated there, headquartered there, and subject to personal jurisdiction there. And as explained, venue is proper in Minnesota.

As to the first factor, a plaintiff's choice of forum is given less weight if the forum "has little connection to the events giving rise to the litigation." *Aphena Pharma*, 912 F. Supp. 2d at 319. The "events giving rise to th[is] litigation" are Christian Heritage Broadcasting's implementation and use of Defendant's Mark in commerce. Christian Heritage Broadcasting made the decisions underlying each of those "events" in Minnesota. (McIver Decl. ¶¶ 7, 19–20). Moreover, Christian Heritage Broadcasting does not direct its activities to Maryland. (*Id.* ¶¶ 8, 10, 15). The only way Plaintiff can draw a connection between Christian Heritage Broadcasting and Maryland is by alleging upon information and belief that persons in Maryland may have accessed Christian Heritage Broadcasting's publicly available website and mobile application. (FAC ¶ 32–34). Such a tenuous and unsupported connection with Maryland cannot be enough to drag Christian Heritage Broadcasting into litigation here. This factor weighs in favor of transfer to Minnesota.

The second factor, witness convenience and access, is "perhaps the most important factor to consider when analyzing a § 1404(a) motion to transfer venue." *United States ex rel. Salomon v. Wolff*, 268 F. Supp. 3d 770, 775 (D. Md. 2017) (quotation omitted). Indeed, "'motions to transfer have been regularly granted where the defendant has shown that most of its key witnesses are residents of another district.'" *Id.* (quoting *Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 465 (D. Md. 2000)). Here, Christian Heritage Broadcasting is headquartered in Minnesota and most of Christian Heritage Broadcasting's employees responsible for trademark and marketing matters—David McIver, Kerry Liebelt, and Carrie Gess—are located in Minnesota. (McIver Decl. ¶¶ 6–7, 20). It would be unduly burdensome and expensive to require Christian Heritage Broadcasting's witnesses to travel to Maryland to participate in discovery and trial. Furthermore, Plaintiff appears to be the sole person responsible for his products, services, and marks. (*See* FAC ¶¶ 7–20 (describing Plaintiff's efforts in developing and promoting his products, services, and marks without mentioning anyone else)). Christian Heritage Broadcasting's multiple witnesses will incur significantly more expense and inconvenience if required to travel to Maryland than Plaintiff would incur if required to travel to Minnesota. Thus, the second and "most important factor" weighs in favor of transfer. *See Mamani v. Bustamante*, 547 F. Supp. 2d 465, 473–74 (D. Md. 2008) (finding transfer would "protect the witnesses from unnecessary inconvenience and expense").

The third factor focuses on party convenience. As previously mentioned, Christian Heritage Broadcasting is incorporated in Minnesota, has its principal place of business in Minnesota, made decisions regarding its trademark usage in Minnesota, and nearly all of its witnesses are in Minnesota. (McIver Decl. ¶¶ 6, 19–20). Further, Christian Heritage Broadcasting's relevant documents are primarily stored in Minnesota and will need to be produced

from Minnesota. (*Id.* ¶ 21). Minnesota is clearly the more convenient venue. The third factor

weighs in favor of transfer.[4]

The last factor is amorphous and has many components like choice of law, local interest,

and other public-interest factors. *Wolff*, 268 F. Supp. 3d at 777. Also relevant are concerns of

judicial economy, docket conditions, the possibility of unfair trial, and the possibility of

harassment. *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 639 (E.D. Va. 2003). There are no

choice-of-law concerns here because each of Plaintiff's claims under Maryland common law

"require proof of the same elements as under the Lanham Act." *JFJ Toys*, 237 F. Supp. 3d at 327

n.6. Thus, there is nothing unique to Maryland common law in this case that a Minnesota court

cannot interpret and apply.

The only local interest implicated in this case is in Minnesota and the surrounding states

where Christian Heritage Broadcasting maintains over-the-air radio stations. Specifically, if

Plaintiff were to prevail in this case, Christian Heritage Broadcasting would need to rebrand its

entire network of radio stations. Listeners would undoubtedly be confused about the name change

and could no longer associate Christian Heritage Broadcasting with the new name. That would

negatively affect Christian Heritage Broadcasting's hard-earned goodwill with consumers and

have far-reaching effects to Christian Heritage Broadcasting's detriment. Plaintiff, on the other

hand, alleges infringement of his *federal* trademark rights for goods and services that he allegedly

offers "across the globe to . . . as many consumers as possible." (FAC ¶¶ 8–20). In fact, the FAC

does not allege any specific action that Plaintiff took or aimed at Maryland directly that would

---

[4] Plaintiff will likely argue that inconvenience is unavoidable in this case because one party will need to litigate in a forum where they have little contacts. That argument is unavailing because "the purpose of statutorily specified venue is to protect the <u>defendant</u> against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183–84 (1979) (emphasis in original). Plaintiff's inconvenience is, thus, beside the point.

create a local tie to Maryland. The fourth factor weighs in favor of transferring this case to the only forum with consequential local ties: Minnesota.

## CONCLUSION

For the foregoing reasons, Christian Heritage Broadcasting respectfully requests that this action be dismissed for lack of personal jurisdiction and improper venue. Alternatively, if the Court does not dismiss, this case should be transferred to the District of Minnesota.

Dated: July 1, 2022

By Its Attorneys,

**LATHROP GPM LLP**

*s/ Dean C. Eyler*
Sheldon H. Klein
sheldon.klein@lathropgpm.com
Samuel A. Butler
samuel.butler@lathropgpm.com
600 New Hampshire Avenue, N.W.
The Watergate – Suite 700
Washington, DC 20037
Telephone:    202.295.2200
Facsimile:    202.295.2250

Dean C. Eyler (admitted *pro hac vice*)
dean.eyler@lathropgpm.com
James A. Wahl (admitted *pro hac vice*)
james.wahl@lathropgpm.com
80 South 8th Street
500 IDS Center
Minneapolis, MN 55402
Telephone:    612.632.3000